COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Petty and McCullough
Argued at Lexington, Virginia


THOMAS LEE HICKS

                                                      OPINION BY
v.       Record No. 1431-11-4            JUDGE ROBERT J. HUMPHREYS
                                                      MAY 29, 2012
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF RAPPAHANNOCK COUNTY
Jeffrey W. Parker, Judge

Lorie E. O'Donnell, Public Defender, for appellant.

Gregory W. Franklin, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Thomas Lee Hicks ("Hicks") appeals his conviction in the Circuit Court of

Rappahannock County ("trial court") where a jury found him guilty of attempted murder,

aggravated malicious wounding, robbery, and use of a firearm in the commission of a felony.

On appeal, Hicks argues (1) that the "trial court erred by ruling that statements of Clyde

Dellinger, the alleged victim, could come into evidence as an excited utterance exception to the

hearsay rule," and (2) the "trial court erred in allowing witnesses to testify at trial regarding the

testimony of Clyde Dellinger that they heard at the Preliminary Hearing." For the following

reasons, we affirm the trial court.

I. Background

This Court reviews the evidence in the light most favorable to the prevailing party in the

trial court. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).

Therefore, we must "discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980). In this light, the evidence is as follows.

On June 10, 2010 at around 8:00 p.m., Clyde Dellinger ("Clyde"), was shot in the face and robbed of the cash in his pocket while in the front yard of his house and shop. Daniel and Paula Dellinger ("Daniel" and "Paula," respectively), Clyde's son and daughter-in-law, who lived just behind Clyde on Scrabble Road, were driving home at about 8:00 p.m. on June 10th when they noticed Clyde lying on his back in the yard. Daniel and Paula pulled into Clyde's driveway and rushed to check on Clyde. Daniel, who was unsure whether his father had been shot or whether he was injured while working, ran up to Clyde and asked him what happened and if he needed help. Clyde had been shot between his eyes at the bridge of his nose within the last couple of minutes, and he was bleeding. Clyde, who was "very excited," said, "'He shot me, Daniel, and he robbed me.'" Daniel testified, "I guess [Clyde] thought he was gonna not make it, so he just gave information and all he could." As he was lying on his back in a pool of blood, Clyde told Daniel that Tom Thompson, or Thomason, shot and robbed him, but Clyde did not provide any more details of the shooting itself. Investigators later determined that Hicks used the name "Tom Thompson" as an alias. Daniel testified that Clyde made these statements "spontaneously" rather than in response to sustained questioning. Clyde also inquired of his son whether he would get some help and whether he could take him to the hospital.

While Daniel attended to Clyde, Paula ran into Clyde's house, called 911, and then joined Daniel and Clyde. Clyde remained conscious during the twelve to fifteen minutes they were waiting for help to arrive. Paula testified that there "was an urgency in his voice, that he had to tell us as much as he could, I believe, because he wasn't sure if he was going to make it." Clyde had an automotive belt in his hand as he lay on the ground. Clyde said that he had sent "Tom" to

the town of Culpeper to get the belt for him, and indicated that the belt was very important to finding "Tom."

Clyde testified at the August 3, 2010 preliminary hearing and identified Hicks as the man who shot and robbed him. Before Hicks' trial, Clyde died of causes unrelated to the gunshot wound to his face. After Clyde's death but prior to trial, the trial court granted the Commonwealth's motions to allow into evidence at trial (1) statements made by the victim who is now deceased under the excited utterance exception to the rule against hearsay, and (2) the preliminary hearing testimony of one who is now deceased.

At trial, the Commonwealth called Sheriff Connie Smith and Paula Dellinger to testify as to Clyde's preliminary hearing testimony. Sheriff Smith testified that she was present at the preliminary hearing involving Hicks and she heard and saw Clyde testify. She identified where Clyde and Hicks were seated at the respective counsel tables and recalled that Judge Underwood[1] took the bench that day. She stated that Clyde was placed under oath. She testified to Clyde's appearance and clothing, and stated that Hicks sat beside his attorney with his head down. Regarding Clyde's testimony, Sheriff Smith said,

> [Clyde] stated that he had given someone some money to go somewhere in Culpeper to pick something up. [Clyde] stated that – well, Mr. Luke [the Commonwealth's Attorney] had asked him first of all what had took place at his residence on the day in question. He stated that he had given someone some money to go somewhere in Culpeper to pick up something.
>
> [Clyde] stated that he leaned over into the car and the person took the gun out and shot him. He stated that he fell to the ground and, He came around, went into my pockets, and took something.
>
> Mr. Luke asked [Clyde] if the person that robbed and shot him was in the courtroom that day. [Clyde] leaned forward, looked over at

---

[1] Judge Underwood was acting as a substitute judge and is not a regular Rappahannock general district judge.

the defense end of the table, took his left hand and pointed and said, "That's him.  He looks a little different today, but that's him."

She affirmed that Clyde was pointing at Hicks.

Paula Dellinger also testified that Clyde was sworn in at the preliminary hearing and she pointed to where he was sitting.  She recalled that Tom Underwood was the judge that day and that Hicks was present with his lawyer.  Paula testified as to her recollection of Clyde's preliminary hearing testimony:

| [Paula]: | He told how he made the acquaintance of this man.  He came by the garage.  And I think he said a couple weeks before the shooting that the man came by the garage and he started kind of hanging around.  He would show up and just hang out for a little while. |
| | |
| | He also told how – he gave details about the day of the shooting, how he had asked him to go to town and purchase a belt, a mechanical type belt. |

*    *    *    *    *    *    *

He told how he was – how the defendant was sitting in his car, and he was on the driver's side of the car, and [Clyde] was standing at the passenger door.  He was kind of leaning into the window and talking to Tom.

He said that – he said that Tom was fiddling with his wallet for a little while on his leg.  He had sat it on his leg and he was seeming a little fidgety with his wallet.  And the last thing that he remembered was that he took his right hand and he reached over to his left side, and the last thing that [Clyde] saw was a flash.

|                             | And the last thing he remembered after that was that Tom came over to him and reached into his pocket and took his money and then left very quickly in his car. |
| --------------------------- | -------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |

*  *  *  *  *  *  *

| [Commonwealth's Attorney]: | And after he gave that testimony, did I ask [Clyde] to identify whether the person that shot and robbed him was in the courtroom? |
| --- | --- |
| [Paula]: | Yes, I do remember that. |
| [Commonwealth's Attorney]: | And tell the jury what [Clyde] did. |
| [Paula]: | The defendant was looking down, and [Clyde] asked that they ask him to look up, and he said that the man that was there was the person who shot him. |
| [Commonwealth's Attorney]: | Was that the defendant right here? |
| [Paula]: | Yes, sir, it was. |

The jury found Hicks guilty on all four charges against him and sentenced him to a total of forty-eight years in the penitentiary. This appeal follows.

II.  Analysis

A.  Excited Utterance

Hicks first contends that the "trial court erred in admitting hearsay testimony concerning statements made by Clyde Dellinger at the scene of the shooting."

It is well established that "the admissibility of evidence is within the discretion of the trial court" and an appellate court will not reject the decision of the trial court unless it finds an abuse of discretion. Midkiff v. Commonwealth, 280 Va. 216, 219, 694 S.E.2d 576, 578 (2010). A "trial judge's ruling will not be reversed simply because an appellate court disagrees. Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Thomas v.

- 5 -

Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743 (2005) (internal quotation and citation omitted).[2]

"There is no fixed rule by which the question whether the statement is admissible as an excited utterance can be decided.  Resolution of the issue depends on the circumstances of each case and 'rests within the sound judicial discretion and judgment of the trial court.'"  Clark v. Commonwealth, 235 Va. 287, 292, 367 S.E.2d 483, 486 (1988) (quoting Huffman v. Commonwealth, 168 Va. 668, 681, 190 S.E. 265, 271 (1937)).

> "A statement comes within the excited utterance exception to the hearsay rule and is admissible to prove the truth of the matter stated, when the statement is spontaneous and impulsive, thus guaranteeing its reliability. . . . The statement must be prompted by a startling event and be made at such time and under such circumstances as to preclude the presumption that it was made as the result of deliberation.  In addition, the declarant must have firsthand knowledge of the startling event.  The decision whether the statement qualifies as an excited utterance lies within the discretion of the trial court." [3]

Caison v. Commonwealth, 52 Va. App. 423, 431, 663 S.E.2d 553, 557 (2008) (quoting Esser v. Commonwealth, 38 Va. App. 520, 525, 566 S.E.2d 876, 879 (2002)).

---

[2] Hicks also argues under this assignment of error that "the admission of evidence in this particular case was a violation of [his] constitutional right to confrontation," and thus requires reversal unless the error is harmless beyond a reasonable doubt.  Hicks did not raise a constitutional confrontation argument related to the excited utterances at the trial court or in his petition for appeal.  This Court will not address it for the first time on appeal.  Rules 5A:12, 5A:18.  An objection must be "both specific and timely – so that the trial judge would know the particular point being made in time to do something about it."  Thomas, 44 Va. App. at 750, 607 S.E.2d at 742.  The analysis for this assignment of error is thus confined to whether the victim's statements fall within the excited utterance exception to the hearsay rule.

[3] Although not yet in effect, we note that the elements of the "excited utterance" exception to the evidentiary rule prohibiting the admission of hearsay testimony recited here have been codified as Va. Rule of Evid. 2:803(2) (effective July 1, 2012), which excludes from the hearsay rule "[a] spontaneous or impulsive statement prompted by a startling event or condition and made by a declarant with firsthand knowledge at a time and under circumstances negating deliberation."  Under this rule, such statements "are not excluded by the hearsay rule. even though the declarant is available as a witness."  Va. Rule of Evid. 2:803 (effective July 1, 2012).

Hicks argues that Clyde's statements beyond his immediate statement, "I've been shot," consisted of a narrative of the day's events and was not an excited utterance. We disagree with his contention. A trial court considers multiple circumstances "'when determining whether the declarant's statement was prompted by a startling event, and not the product of premeditation, reflection or design.'" Perry v. Commonwealth, 58 Va. App. 655, 669, 712 S.E.2d 765, 772 (2011) (quoting Braxton v. Commonwealth, 26 Va. App. 176, 184, 493 S.E.2d 688, 691 (1997)).

In Clark, the Virginia Supreme Court found that the trial court properly admitted the victim's declaration as an excited utterance after considering all of the circumstances. Clark, 235 Va. at 293, 367 S.E.2d at 486. After being shot twice in the chest from a close range, the victim walked 492 feet into a store to seek help. The manager of the store asked the victim, "What happened, were you in a fight, did somebody try to rob you? What is the matter Mac?" The statement at issue was the victim's reply: "'The tall boy, the tall boy that used to work at Weber's.' . . . 'Tell Jerry' and 'call the police.'" Id. at 289, 367 S.E.2d at 484. The victim made the statement between five and ten minutes after the shooting. Id. at 293, 367 S.E.2d at 486. The Court considered that the victim "had been mortally wounded, he was suffering from the trauma he was in or approaching a state of shock, and his emotional stability was tenuous at most. The statement was not a mere narrative of a completed affair. Rather, it was part of the instinctive reaction to a horrifying event." Id. The Court determined that it was proper for the trial judge to consider the victim's physical condition and emotional stability along with the time frame of the statement from the exciting event. Id. The Court noted that neither time nor distance from the exciting event is conclusive. Id. at 292, 367 S.E.2d at 486. See also Doe v. Thomas, 227 Va. 466, 472, 318 S.E.2d 382, 385 (1984) (the lapse of time between the startling event and the declaration offered in evidence is relevant in determining the spontaneity of the statement, but not controlling).

Considering all the circumstances surrounding Clyde's statements, we cannot say that the trial court abused its discretion in admitting the statements as excited utterances. Clyde suffered a gunshot wound between the eyes, a potentially mortal wound and an undoubtedly startling event. Clyde's statements to his son and daughter-in-law shortly after suffering the wound were that he had been shot and robbed, that Tom Thompson was his assailant, and that Tom had purchased the automotive belt for Clyde in Culpeper. The record establishes that these statements were made, at most, a few minutes after he was shot. Clyde made all of the statements at issue while he was physically incapacitated, emotionally distraught, and lying in a pool of his own blood, and while at the same time asking for medical help.[4]

The fact that Clyde's statements followed Daniel's general question of "What happened?" and that he elaborated beyond merely stating "I've been shot," does not diminish the fact that his statements were made under the impulse of a startling event that had occurred a few minutes before.[5] The fact that a declarant's statements were made in response to a question enters the excited utterance analysis for the purpose of determining whether the inquiry gave the declarant an opportunity to deliberate, see Doe, 227 Va. at 472, 318 S.E.2d at 385, or whether the question or questioner suggested or influenced a response and thereby corrupted the reliability of the statement, see Martin v. Commonwealth, 4 Va. App. 438, 442, 358 S.E.2d 415, 418 (1987). The fact that Daniel was trying to find out what took place does not establish that he was

---

[4] We reiterate that the lapse of time is only one circumstance to consider when determining whether the declarant's statement was prompted by a startling event and not premeditated. Braxton, 26 Va. App. at 184, 493 S.E.2d at 691-92. In Braxton, a child's statement was admissible as an excited utterance even though the record did not establish how much time had passed between the murder of the child's mother and the child's statement. Id. at 184, 493 S.E.2d at 691.

[5] As noted *supra*, the statement admissible as an excited utterance in Clark was made in response to the questions "What happened, were you in a fight, did somebody try to rob you? What is the matter Mac?" Clark, 235 Va. at 289, 367 S.E.2d at 484. Thus, in this case, Daniel's question of, "What happened?" within a minute or two of the shooting did not disqualify Clyde's statements from the excited utterance exception.

influencing Clyde's answers or prompting Clyde to make unreliable statements. Further, the fact that Clyde was trying to provide as much information as he could does not bar his statements as excited utterances. The record lacks any evidence that Clyde had an opportunity to deliberate and fabricate statements regarding the incident or his assailant, or that his statements were the product of influenced questioning. Clearly, Clyde was still under the influence of the startling event as he lay on the ground waiting for the ambulance with a fresh gunshot wound to his face. Daniel described his father as "very excited" and the statements as "spontaneous," and Paula testified that "there was an urgency in [Clyde's] voice, that he had to tell us as much as he could, I believe, because he wasn't sure if he was going to make it." Therefore, it was reasonable for the trial court to conclude that Clyde made the statements while still under the influence of the startling event and at a time and under such circumstances as to preclude the conclusion that they were made as the result of deliberation. We thus affirm the trial court's ruling admitting Clyde's statements under the excited utterance exception to the rule against hearsay.

### B. Preliminary Hearing Testimony

Hicks also argues that the trial court erred in admitting witness testimony concerning Clyde's preliminary hearing testimony. "The admissibility of evidence is within the discretion of the trial court, and we review its decisions only for abuse of discretion." Dickens v. Commonwealth, 52 Va. App. 412, 417, 663 S.E.2d 548, 550 (2008).

The Virginia Supreme Court has held that,

> The preliminary hearing testimony of a witness who is absent at a subsequent criminal trial may be admitted into evidence if the following conditions are satisfied: (1) that the witness is presently unavailable; (2) that the prior testimony of the witness was given under oath (or in a form of affirmation that is legally sufficient); (3) that the prior testimony was accurately recorded or that the person who seeks to relate the testimony of the unavailable witness can state the subject matter of the unavailable witness's testimony with clarity and in detail; and (4) that the party against whom the prior testimony is offered was present, and represented by counsel,

at the preliminary hearing and was afforded the opportunity of cross-examination when the witness testified at the preliminary hearing.

Longshore v. Commonwealth, 260 Va. 3, 4, 530 S.E.2d 146, 146 (2000).[6]

Of the four requirements provided in Longshore, Hicks only challenges the admission of Clyde's preliminary hearing testimony on the basis that Paula and Sheriff Smith did not recall Clyde's testimony with clarity and in detail. Virginia case law has not addressed the requisite level of clarity and detail that the trial witness' testimony must achieve. In this case, both Sheriff Smith and Paula confirmed the most important facts -- that at the preliminary hearing, Clyde Dellinger positively identified Thomas Lee Hicks as the man who shot him in the face and robbed him. While Paula provided more detail than Sheriff Smith regarding Clyde's testimony at the preliminary hearing, both provided sufficient detail of Clyde's identification of Hicks as the perpetrator,[7] as well as additional details, which established their familiarity with what transpired at the hearing. The trial court certainly did not abuse its discretion when it allowed Sheriff Smith and Paula to testify at trial as to Clyde's identification of Hicks at the preliminary hearing as the man who shot and robbed him.

Finally, Hicks asserts under this assignment of error that he was denied a fair trial, because he did not have the chance to confront his accuser in front of the jury at trial. When dealing with an issue involving the Sixth Amendment right to confrontation, "[w]e review *de novo* [an appellant's] claim that his right to confrontation was violated." Harper v. Commonwealth, 54 Va. App. 21, 24, 675 S.E.2d 841, 843 (2009).

---

[6] Hicks does not challenge the fact that the Supreme Court of Virginia's Longshore decision supplies the rule of decision. We also note for informational purposes that as of July 1, 2012, hearsay issues regarding the use of testimony will be governed by Va. Rule of Evid. 2:804(b)(1) (effective July 1, 2012) which codifies the holding of Longshore.

[7] Hicks conceded at oral argument that the trial witnesses did not lack clarity and detail in their testimony regarding Clyde's identification of Hicks as the perpetrator at the preliminary hearing.

The United States Supreme Court has held that the Confrontation Clause "permits admission of 'testimonial statements of witnesses absent from trial . . . only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.'" Bullcoming v. New Mexico, 131 S. Ct. 2705, 2707 (2011) (quoting Crawford v. Washington, 541 U.S. 36, 59 (2004)). See also Schneider v. Commonwealth, 47 Va. App. 609, 613, 625 S.E.2d 688, 690 (2006) ("[O]ur law regarding the admissibility of preliminary hearing testimony has always required unavailability and an opportunity for cross-examination and complies with the new requirements of Crawford without alteration."). Hicks does not contest that Clyde was unavailable at trial due to his death, or that Hicks was present at the preliminary hearing with his attorney and had the opportunity to cross-examine Clyde.[8] Hicks' right to confront his accuser was thus satisfied under Crawford and Bullcoming.

III. Conclusion

Because Clyde's statements made immediately after he was shot and his preliminary hearing testimony were properly admitted at trial under recognized exceptions to the general evidentiary rule prohibiting hearsay and because Hicks had the opportunity to confront and cross-examine Clyde at the preliminary hearing, thus satisfying Hicks' Sixth Amendment right to confront his accuser, we affirm the judgment of the trial court.

Affirmed.

---

[8] At oral argument, counsel for Hicks acknowledged that Clyde was cross-examined at the preliminary hearing.