COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Alston and Senior Judge Haley
Argued at Richmond, Virginia


THOMAS JAMES SYNAN, II
                                                    OPINION BY
v.        Record No. 0795-15-2           JUDGE ROSSIE D. ALSTON, JR.
                                                    JANUARY 24, 2017
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Joseph J. Ellis, Judge

Julia B. Dillon for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General; Kathleen B. Martin,[*] Senior Assistant
Attorney General, on brief), for appellee.


Thomas James Synan, II appeals the decision of the trial court finding appellant guilty of

malicious wounding, driving under the influence ("DUI"), and assault of two individuals, Teresa

Hiddleston and Dawn Napper.[1]  Appellant argues that the trial court erred in admitting certain

statements that were self-serving hearsay lacking any reliability.  Appellant also argues that the

trial court erred in finding the evidence sufficient to convict appellant of malicious wounding,

---

[*] Kathleen B. Martin became an employee of this Court on August 10, 2016.  She has had
no involvement in the Court's review of this case.

[1] On February 19, 2013, appellant was indicted for one count of assault and battery of a
family member, third offense, in violation of Code § 18.2-57.2.  On March 18, 2013, appellant
was indicted on eight additional charges:  attempted second-degree murder of Ruth Synan in
violation of Code §§ 18.2-26 and 18.2-32; aggravated malicious wounding of Ruth Synan in
violation of Code § 18.2-51.2(A); two counts of attempted aggravated malicious wounding of
Dawn Napper and Teresa Hiddleston in violation of Code §§ 18.2-26 and 18.2-51.2(A); maiming
another resulting from DUI in violation of Code § 18.2-51.4; driving while a habitual offender in
violation of Code § 46.2-357; DUI, second offense within five years in violation of Code
§ 18.2-266; and malicious wounding of Ruth Synan during a felony in violation of Code
§ 18.2-53.

assault and battery, and DUI.  We disagree with appellant.  As such, we affirm the decision of the trial court.

BACKGROUND

On December 1, 2012, appellant and his wife, Ruth Synan, were involved in an accident resulting in their van crashing into an embankment after crossing through oncoming traffic.  At appellant's February 3, 2015 bench trial,[2] several witnesses testified as to the events surrounding the accident.

Teresa Hiddleston testified that on December 1, 2012, the day of the accident, she was transporting a high school band, from a parade at the Spotsylvania Courthouse back to Massaponax High School, in a school bus.  While driving, Hiddleston saw a van turning in front of the bus and had to swerve over the yellow line to avoid hitting the van.  She stated that the van turned at a very sharp and abrupt ninety-degree angle.  Hiddleston testified that she came "real close" to hitting the van, estimating that it was "[p]robably not even a half a car length[]" away.  At the time, Hiddleston was driving approximately forty-five miles per hour but she did not speculate as to how fast appellant's van was going, although she did indicate that "[it] was moving very fast" and it did not slow down.  Hiddleston testified that when she swerved over the yellow line, the children on the bus were "out of their seat[s]," but noted that everyone was okay.  After the van passed in front of her bus, Hiddleston saw it "hit the embankment and then it kind of bounced back and rolled over to its side."  At that point, Hiddleston pulled the bus over.  She

---

[2] At trial, the Commonwealth *nolle prosequied* three of the charges:  malicious wounding of Ruth Synan during a felony in violation of Code § 18.2-53; maiming another (Ruth Synan) resulting from DUI in violation of § 18.2-51.4; and driving while a habitual offender in violation of Code § 46.2-357.  Additionally, the Commonwealth amended several of the indictments before proceeding at trial.  Ultimately, the Commonwealth moved forward with six charges at trial:  (1) assault and battery of a family member, third offense; (2) attempted second-degree murder of Ruth Synan; (3) malicious wounding of Ruth Synan; (4) simple assault and battery of Dawn Napper; (5) simple assault and battery of Teresa Hiddleston; and (6) DUI first offense.

- 2 -

remained on the bus while chaperones and some of the students went to help. Hiddleston testified that she did not see the occupants of the van nor did she know who was driving at the time of the incident.

Dawn Napper, a chaperone for the marching band, testified that she was riding in Hiddleston's bus at the time of the incident. Napper saw the van in the other lane heading toward the bus and testified that it "started swerving and all of a sudden [it] just cut right in front of [the] bus." She too described the turn as very sharp and abrupt. Napper further testified that the van came "within inches" of the bus and would have hit the bus absent Hiddleston's maneuvers to avoid it. Napper estimated that the bus was going about forty-five miles per hour.

After watching the van crash, Napper called 911, exited the bus, and walked over to the man who was inside the van. Napper testified that appellant directed his attention to the other person in the van and kept saying: "I'm sorry, baby. I didn't mean to hurt you. I didn't mean to hurt you." Napper also heard appellant say he would have to "get back in there. There's money I've got to get out of there. I've got to get back in there." Napper described appellant as "very panicky" and noted that appellant smelled of alcohol and was unintelligible at times. Napper did not see any alcohol in or near the van, but she indicated that the smell was "overwhelming" and it seemed to be coming from appellant and not the van itself.

James Jackson, who was riding in another bus that was taking band members back from the parade, also saw the van coming down the other lane. Jackson did not know how fast the van was traveling but noticed it "because of its sporadic nature on the road. It was weaving back and forth." Jackson characterized the van's turn as a "hard left" and noticed that the other bus moved to the left. Jackson stated that the van "came up on the buses' right side and eventually made another hard left turn over the side of the road and then up the embankment." He said that the

van hit the embankment with "a pretty good rate of speed. You could tell that whoever was driving lost control."

Jackson testified that he saw appellant exit from the top of the van, jump off, and collapse, stating that he was in pain. Jackson described appellant's demeanor as angry and further elaborated that appellant was saying things like: "he was getting the 'F' out of the way," "[h]e was leaving the scene," and asking others "to leave him alone." Jackson testified that he went over to the van to try to help the female who was still inside calling for help. Inside the van he saw "an extremely large quantity of beer cans," both opened and unopened. Jackson described the female occupant of the vehicle as "crying, hysterical, [and] shaken."

While assisting the female occupant of the van, Jackson heard appellant saying, "baby, I didn't mean this. I didn't want to hurt you. I wasn't trying to hurt us. Please forgive me," and other words indicating that appellant was generally apologetic for the accident. Jackson continued trying to calm the female occupant down but indicated that "[s]he didn't calm down for a while." Jackson stated that she was "rambling," telling him things voluntarily and that it got to the point "where she wanted [him] to know that [appellant] jerked the steering wheel. She wanted [him] to know that [appellant] tried to kill them both by hitting the van, that he was yelling at her, [and] that they were fighting." Jackson estimated that it was no more than two minutes from the time of the accident to the time when he was at the vehicle with the female inside the van.

At the conclusion of Jackson's testimony, appellant objected to the statements made by Ruth Synan at the scene, arguing that they were self-serving hearsay. The Commonwealth argued that the statements fell within the excited utterance exception to the hearsay rule and that the statements were not elicited in response to a line of questioning but rather came as a response

to one question: "What happened?" Further, the Commonwealth argued that Jackson did not offer any suggestions as to what occurred. The trial court overruled appellant's objection.

Stephannie Hartwig, a chaperone on Jackson's bus, testified that Jackson brought her attention to the van driving erratically, and she turned and saw the van go up the embankment and roll back down. After the accident, Hartwig sat with appellant on the embankment, trying to assist him while they waited for rescue personnel to arrive. Hartwig testified that appellant was very agitated, insisting on wanting to talk to the female in the vehicle. Hartwig noted that appellant was concerned about money in the van, insistent that Hartwig call his daughter, and adamant about having to leave before the authorities arrived.

Hartwig stated that when she briefly spoke to the female in the van to get appellant's daughter's phone number, the female in the van was in shock and had a "very jittery voice, [and was] very . . . upset." Hartwig estimated that the rescue squad arrived in less than ten minutes and that the conversations with appellant and the female in the van all occurred within that timeframe. The female in the van kept saying "I can't believe he did this. I don't know why he did this, you know, he did this." Hartwig testified that appellant repeatedly apologized, saying: "I'm sorry, Susie. I didn't mean to do it Susie."

Prior to resting its case, the Commonwealth mentioned the following stipulations: (1) Ruth Synan was appellant's wife and (2) at the time of the accident, appellant's BAC was above .08. At the conclusion of the Commonwealth's case, appellant moved to strike the evidence. Appellant argued that there was no evidence that either Napper or Hiddleston felt threatened by appellant and that no one saw who was in control of the vehicle when it swerved into oncoming traffic. Appellant also argued that there was no evidence showing that he acted with malice and the intent to maim, disfigure or kill. Appellant maintained that he was in the vehicle at the time of the accident, so he would have wanted to hurt himself if he grabbed the

wheel. Further, appellant argued that there was no space in the car for him to gain control over the vehicle by jerking the wheel to the left. Appellant also pointed out that medical records showed that he was wearing his seatbelt which would have hindered his ability to take control of the vehicle. The trial court denied appellant's motion.

Appellant called Ruth Synan (hereinafter "wife") in his defense, and she testified that while they were driving, she became upset about appellant's actions at a flea market they had just been to and, as a result, was intermittently looking down at the cash kept in her bra while driving on Massaponax Church Road. After she threw twenty dollars in various bills at appellant, she felt a bump and did not know if the van "was running off the road or what and [she] saw his hand move . . . so [she] told the [bystanders] that [appellant] had grabbed the wheel." However, when wife testified at trial she no longer believed that appellant grabbed the wheel, but rather, that he just reached for it. Wife testified that when she felt the bump in the road her reaction was to "yank the wheel" toward the left and that she "yanked it pretty hard." Wife also indicated that she saw one school bus at that time. Wife did not think that she was close to hitting the school bus and testified that there were five to seven car lengths between the van and the bus when she yanked the wheel to the left.

After the accident, wife maintained that she was "so upset and so out of it." She stated that she "wasn't even thinking" and was "dumbfounded that [the accident] happened." Wife testified that appellant never threatened to hurt her, himself, or anyone on the bus. On cross-examination, wife admitted telling Deputy William Jeffries that appellant grabbed the steering wheel and began shaking it. However, she denied telling Jackson that appellant was trying to kill her or trying to hit the bus.

The Commonwealth called Deputy Jeffries as a rebuttal witness, and he testified that he investigated the accident involving appellant's vehicle. According to Deputy Jeffries, wife told

him that she "was unable to keep [appellant] from taking control of the van" and that he grabbed the wheel from her. Deputy Jeffries testified that wife told him that appellant stated that he was "tired of this shit" and wife thought she was going to die. Deputy Jeffries also spoke with appellant at the hospital and testified that he was "very argumentative" and smelled of alcohol. Deputy Jeffries stated that appellant's speech was slurred and loud.

Appellant renewed his motion at the close of all the evidence, which the trial court granted in part[3] and denied in part. At the end of the trial, the trial court found appellant guilty of malicious wounding of wife, DUI, and assault and battery of Hiddleston and Napper. The trial court stated that it believed appellant

> had control, perhaps not permanently, but momentarily sufficient to have fought for the wheel. [T]he [trial c]ourt [found wife's] testimony [at trial] to be completely incredible and [found] . . . the statements . . . she made . . . to the deputy and the statements she made to the individuals that came to her aid from the school buses to be entirely consistent with the other facts in the case and, therefore, more credible than the statement she gave the [trial c]ourt [at trial].

On May 22, 2015, the trial court entered a sentencing order and sentenced appellant to twenty (20) years' incarceration with eleven (11) years suspended on the malicious wounding charge, and twelve (12) months in jail on each of the two assault and battery charges, as well as the DUI charge. This appeal followed.

---

[3] The trial court dismissed the charges of assault and battery against a family member, third offense and attempted second-degree murder of Ruth Synan.

ANALYSIS

## I. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ADMITTING WIFE'S STATEMENTS UNDER THE EXCITED UTTERANCE EXCEPTION TO THE HEARSAY RULE.

First, appellant asserts that the trial court erred in admitting statements made by wife to Jackson shortly after the accident. In its ruling, the trial court admitted wife's statements pursuant to the excited utterance exception to the hearsay rule. "It is well established that 'the admissibility of evidence is within the discretion of the trial court' and an appellate court will not reject the decision of the trial court unless it finds an abuse of discretion." Hicks v. Commonwealth, 60 Va. App. 237, 244-45, 725 S.E.2d 748, 752 (2012) (quoting Midkiff v. Commonwealth, 280 Va. 216, 219, 694 S.E.2d 576, 578 (2010)). "There is no fixed rule by which the question whether the statement is admissible as an excited utterance can be decided. Resolution of the issue depends on the circumstances of each case and rests within the sound judicial discretion and judgment of the trial court." Id. at 245, 725 S.E.2d at 752 (quoting Clark v. Commonwealth, 235 Va. 287, 292, 367 S.E.2d 483, 486 (1988)).

In Hicks, this Court noted that:

> A statement comes within the excited utterance exception to the hearsay rule and is admissible to prove the truth of the matter stated, when the statement is spontaneous and impulsive, thus guaranteeing its reliability. . . . The statement must be prompted by a startling event and be made at such time and under such circumstances as to preclude the presumption that it was made as the result of deliberation. In addition, the declarant must have firsthand knowledge of the startling event. The decision whether the statement qualifies as an excited utterance lies within the discretion of the trial court.

Id. at 245, 725 S.E.2d at 753 (quoting Caison v. Commonwealth, 52 Va. App. 423, 431, 663 S.E.2d 553, 557 (2008)). "Although not controlling, the lapse of time between the 'startling event' and a declaration offered in evidence is relevant to a determination whether the

- 8 -

declaration was spontaneous and instinctive, or premeditated and deliberative." Doe v. Thomas,

227 Va. 466, 471, 318 S.E.2d 382, 385 (1984) (citing McIlwain v. McIlwain, 215 Va. 633, 636,

212 S.E.2d 284, 286 (1975)).  Also relevant to the consideration is "whether the declarant made

an exclamation impulsively on his own initiative, or a statement in response to a question."

Martin v. Commonwealth, 4 Va. App. 438, 441, 358 S.E.2d 415, 417 (1987) (quoting Doe, 227

Va. at 471-72, 318 S.E.2d at 385).

Here, wife made her statements within minutes of the startling event.  As such, there is no

indication that there was any meaningful delay between the time of the accident and the time that

Jackson got into the van to assist wife and subsequently heard her statements.  Additionally,

there is no evidence that Jackson questioned wife or directed her to make such statements.

Further, the trial court made explicit credibility and factual findings with respect to wife's

statements after the accident and considered her conflicting trial testimony.  At the conclusion of

the evidence, the trial court stated that it found wife's testimony:

> completely incredible and [found] . . . the statements she made to
> the individuals that came to her aid from the school buses to be
> entirely consistent with the other facts in the case and, therefore,
> more credible than the statement she gave [at trial].

As a result, the trial court found that the excited utterance exception "clear[ly] and

unequivocal[ly]" applied to wife's statements.  We do not disturb this determination.

We hold that the trial court did not abuse its discretion in admitting wife's statements into

evidence.

> II.  THE EVIDENCE WAS SUFFICIENT TO CONVICT APPELLANT OF
> MALICIOUS WOUNDING, ASSAULT AND BATTERY, AND DRIVING
> UNDER THE INFLUENCE.

Appellant contends that the evidence was insufficient to prove malice with respect to the

malicious wounding charge because the evidence did not prove that he was in full control of the

- 9 -

vehicle. Based on that same argument, appellant also argues that the evidence was insufficient to convict him of driving under the influence. Finally, appellant contends that the evidence was insufficient to convict him of assault and battery of Hiddleston and Napper.

"We review the sufficiency of the evidence in the light most favorable to the Commonwealth, and only reverse the judgment of the circuit court when its decision is plainly wrong or without evidence to support it." Farhoumand v. Commonwealth, 288 Va. 338, 351, 764 S.E.2d 95, 102 (2014) (citing Maldonado-Mejia v. Commonwealth, 287 Va. 49, 54, 752 S.E.2d 833, 835 (2014)). "If there is evidence to support the convictions, the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial." Courtney v. Commonwealth, 281 Va. 363, 366, 706 S.E.2d 344, 346 (2011) (quoting Clark v. Commonwealth, 279 Va. 636, 640-41, 691 S.E.2d 786, 788 (2010)).

## A. Driving Under the Influence

Code § 18.2-266 makes it "unlawful for any person to drive or operate any motor vehicle . . . (ii) while such person is under the influence of alcohol." Appellant asserts specifically that there was insufficient evidence that he drove or "operated" the vehicle at the time of the accident. Code § 46.2-100 "defines the terms operator and driver to include 'every person' who 'drives or is in actual physical control' of a vehicle." Dugger v. Commonwealth, 40 Va. App. 586, 591, 580 S.E.2d 477, 480 (2003) (quoting Code § 46.2-100). We have previously held that "operating a vehicle" does not require the engine to be running, that the operator move the vehicle, or that a driver even be sitting in the vehicle. See id. at 592, 580 S.E.2d at 480.

In Dugger, we specifically addressed whether "a passenger who forcibly seizes control of the steering wheel of a moving vehicle exercises sufficient control to fall within the scope of the DUI . . . [statute] as a matter of law." Id. Appellant, in Dugger, was a passenger in a car driven

by his sister when he became agitated during an argument with her and "grabbed the wheel" of the car, steering it off the interstate and into a guardrail. Id. at 589-90, 580 S.E.2d at 479. Appellant was intoxicated at the time. Id. at 589, 580 S.E.2d at 479. Despite appellant's testimony that he grabbed the wheel to avoid an imminent accident with a truck, the jury found appellant guilty of DUI and this Court affirmed, holding that appellant "exercised sufficient control over the vehicle to support" his conviction under the DUI statute. Id. at 594, 580 S.E.2d at 481. In so holding, we emphasized that the purpose of the DUI statute is to address

> the risk of harm posed by vehicles under the control of intoxicated individuals. Whether that risk comes from an inebriated passenger (who forcibly takes control of the steering wheel) or from a drunk driver should not matter. The brevity of actual control likewise does not place the risk of harm outside the intended scope of the statute.

Id. at 593, 580 S.E.2d at 481.

Here, in finding appellant guilty of DUI, malicious wounding, and assault and battery, the trial court specifically found that appellant "had control, perhaps not permanently, but momentarily sufficient to have fought for the wheel." The trial court also found wife's trial testimony incredible and instead believed her original statements to Jackson and Deputy Jeffries that appellant took the wheel and was trying to kill them. The parties stipulated that appellant's blood-alcohol concentration at the time of the accident was above 0.08. As such, we find the evidence was sufficient for the trial court to convict appellant of DUI. Just as the appellant in Dugger took brief but sufficient control of the vehicle by grabbing the steering wheel, so too did appellant in the present case. We do not find the trial court's determination plainly wrong or without evidence to support it.

## B. Malicious Wounding

Appellant also argues that the trial court erred in finding him guilty of malicious wounding of wife because the evidence was insufficient to show that he acted with malice. Part of appellant's argument centers on his contention that the evidence did not prove that he exercised sufficient control over the vehicle. For the reasons stated in the previous section of this opinion, we find no error in the trial court's determination that appellant "operated" the vehicle by grabbing the steering wheel and causing the accident. Therefore, we turn instead to whether this evidence sufficiently showed that appellant acted with malice.

Code § 18.2-51 makes it a Class 3 felony for any person to "maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill." "Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will. It may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury." Robertson v. Commonwealth, 31 Va. App. 814, 823, 525 S.E.2d 640, 645 (2000) (quoting Hernandez v. Commonwealth, 15 Va. App. 626, 631, 426 S.E.2d 137, 140 (1993)). "Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed a purposeful and cruel act without any or without great provocation." Id. (quoting Branch v. Commonwealth, 14 Va. App. 836, 841, 419 S.E.2d 422, 426 (1992)). "Whether malice existed is a question for the fact finder." Id.

In the present case, the evidence was sufficient to find that appellant acted with malice. The trial court found that appellant took control of the vehicle and abruptly steered it across oncoming traffic and into an embankment, putting both his and wife's lives in danger, as well as the lives of the occupants of the school buses. Jackson testified that wife was "rambling" and "wanted [him] to know that [appellant] tried to kill them both by hitting the van, that he was

- 12 -

yelling at her, [and] that they were fighting." Deputy Jeffries' and Hartwig's testimony corroborated Jackson's testimony that wife was hysterical, very shaken, and repeatedly said that appellant grabbed the wheel during their argument and that she feared for her life.

From this evidence, the trial court could have reasonably inferred that appellant committed a "purposeful and cruel act without . . . great provocation." Id. (quoting Branch, 14 Va. App. at 841, 419 S.E.2d at 426). Directing the van into oncoming traffic, off the road, and into an embankment could certainly be interpreted as "conduct which [would] necessarily result in injury." Id. (quoting Hernandez, 15 Va. App. at 631, 426 S.E.2d at 140). Therefore, there was no error in the trial court finding appellant guilty of malicious wounding.

### C. Assault

"To sustain a conviction for assault, the Commonwealth must prove 'an attempt or offer, with force and violence, to do some bodily hurt to another.'" Parish v. Commonwealth, 56 Va. App. 324, 329, 693 S.E.2d 315, 318 (2010) (quoting Adams v. Commonwealth, 33 Va. App. 463, 468, 534 S.E.2d 347, 350 (2000)).

> The attempt or offer to do bodily harm "occurs when an assailant engages in an overt act intended to inflict bodily harm [while he] has the present ability to inflict such harm or [the assailant] engages in an overt act intended to place the victim in fear or apprehension of bodily harm and creates such reasonable fear or apprehension in the victim."

Id. at 329-30, 693 S.E.2d at 318 (quoting Clark, 279 Va. at 641, 691 S.E.2d at 789).

The trial court convicted appellant of assaulting Hiddleston, the driver of one of the buses, and Napper, a chaperone on that bus, who was looking out of the front window at the time of the accident. Hiddleston testified that the van "was moving very fast" and "did not slow down." She characterized the van's turn in front of the bus as abrupt and sharp. As a result, Hiddleston had to swerve over the yellow line into oncoming traffic to prevent the bus from

- 13 -

colliding with the van. The swerve she took caused the children on the bus to fall out of their seats. Napper similarly testified that the van swerved suddenly and came "within inches" of hitting the bus. She estimated that the bus was going about forty-five miles per hour at the time and absent Hiddleston's maneuver, the bus would have collided with the van.

This evidence was sufficient for the trial court to conclude that appellant acted overtly with the intent to inflict bodily harm and place the occupants of the bus in fear of bodily harm. Hiddleston's and Napper's testimony established that appellant caused reasonable fear in their minds that the bus and van would collide causing them great bodily harm. Thus, we find no error in the trial court's ruling.

For the foregoing reasons, we affirm the trial court on all assignments of error and affirm appellant's convictions.

<u>Affirmed.</u>