COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Decker, Judges Beales and White
Argued at Richmond, Virginia


ANDREW JOSEPH HAEFELE

                                                                OPINION BY
v.        Record No. 0508-21-2                    JUDGE RANDOLPH A. BEALES
                                                               OCTOBER 18, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Ricardo Rigual, Judge

James Joseph Ilijevich for appellant.

Leanna C. Minix, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Andrew J. Haefele appeals from an order of the Circuit Court of Spotsylvania County

convicting him of two counts of maliciously maiming the livestock of another, in violation of

Code § 18.2-144, and two counts of conspiring to maliciously maim the livestock of another.[1]

On appeal, Haefele contends that the trial court erred in convicting him of violating Code

§ 18.2-144 because he "acted with the permission and consent of the owner of the animals."  He

also contends that the trial court erred in convicting him of conspiring to maliciously maim the

livestock of another because "the Commonwealth failed to prove the underlying felony offense."

I.  BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, [as] the prevailing party at trial."  *Gerald v.*

*Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381

---

[1] The trial court also convicted Haefele of one count of falsely identifying himself to a
law enforcement officer, a misdemeanor, and two counts of possession of a Schedule I or II
controlled substance.  Haefele did not appeal these convictions.

(2016)).  So viewed, Halie Morgan owned two small goats and kept them on her property in Spotsylvania County.  In May 2020, following several complaints from neighbors, Dena Slingerland—a Code Enforcement Officer for the Spotsylvania County Zoning Office— informed Morgan that "the keeping of livestock is a non-permitted use" on her property, given its zoning.  Slingerland instructed Morgan to promptly remove the goats from her property and offered her assistance in relocating the goats.

On June 18, 2020, C.P.,[2] Morgan's neighbor, saw Morgan and three men—later identified as Andrew Haefele, Donald Compton, and Charles McKinney—inside Morgan's goat pen.  C.P. testified that she saw a man in a white shirt (later identified as Haefele) swinging "what looked like a two-by-four with spikes wrapped around it" at the goats "as if it was a bat." While Haefele "continued to swing at the goats," C.P. saw Morgan order her two dogs to attack the goats, and she observed McKinney standing "a little further back."  C.P. also observed Compton recording the brutal attack on his cell phone, and C.P. herself recorded on her cell phone some of what she was viewing.

Another neighbor, M.J., also "heard a ruckus out back" and observed "someone swinging some sort of object" in Morgan's backyard.  He reported the group's activities to "Spotsylvania County law enforcement," and a short time later, Deputy A. Mele of the Spotsylvania County Sheriff's Office arrived at Morgan's property.  Deputy Mele spoke with McKinney and Compton and informed them that the Sheriff's Office had received a "complaint about the goats on the property being hit with possible sticks or poles."  When the deputy asked them what had happened to the goats, McKinney claimed "[t]hat the goats had been picked up that morning" by a disposal company.  The deputy then left without conducting a search of the property.

---

[2] We use initials for each of Morgan's neighbors in an effort to better protect their privacy.

Deputy Mele then spoke with Morgan's neighbors. C.P. showed the deputy cell phone video footage that she had taken of what had just occurred with the goats. After viewing this footage, Deputy Mele became "worried that there were injured animals" in Morgan's backyard and returned to Morgan's property. Deputy Mele spoke with Compton and McKinney again and this time also spoke with Morgan, who also claimed that a disposal company had picked up the goats that morning. Morgan consented to a search of her property. During the deputies' search of the property, they "found two deceased goats" in two separate locations—each of which was covered.

A subsequent search of Compton's cell phone revealed several videos depicting the group's attack on the goats.[3] In one video, Haefele had armed himself with a "spiked mace," which is essentially a wooden club with metal spikes protruding from one end. He violently swung the weapon at one of the goats, but he missed the goat and struck a wooden structure instead. As the goat ran from Haefele, Compton exclaimed, "Strike one! That woulda taken its head right off, dude!" Haefele then instructed Compton to hand him some goat feed and poured it on the ground. As the goats ate, Haefele swung at and hit one of the goats with the spiked club, which caused both goats to flee. Haefele continued to seek out opportunities to hit the goats by again attempting to lure them toward him.

As also recorded on the video, Morgan suggested that they just let her dogs kill the goats instead, to which Compton exclaimed, "That's awesome! That's Animal Cruelty 101!" Morgan then got the dogs agitated, released them into the goat pen, and repeatedly encouraged the dogs to "get 'em." The dogs chased the goats for approximately five minutes but did not kill the goats. Even as the dogs chased the goats, Haefele continued to move around the pen and hit the goats with the spiked club. At one point, Compton instructed Haefele "to go after the weak one"

---

[3] The Commonwealth entered the videos taken from Compton's cell phone into evidence at trial without objection.

and exclaimed that the goat had "too much pep left in his step." When one of the goats climbed onto a wooden structure in the goat pen, Haefele took the opportunity to strike it with the spiked club—knocking the goat to the ground. One of the men joked, "That was his homerun swing right there!" Throughout the attack on the goats, the group can be heard gleefully making jokes and laughing about causing the goats' injuries and suffering.

After several blows from the spiked club and several minutes of being chased by Morgan's dogs, Morgan lamented that the goats just would not die. Compton offered to retrieve his shotgun from the nearby house, but he did not ultimately retrieve it. In a second video, McKinney grabbed one of the goats and slashed at the goat's neck with a machete[4] until it could no longer run away. The goat bleated and writhed as it died. In a third video, Haefele grabbed hold of the other goat, pinned it down, and repeatedly struck at the goat's neck with a machete. Despite numerous blows, the goat was still breathing so McKinney approached and cut its throat with a knife.

Haefele, Compton, McKinney, and Morgan were tried jointly in a bench trial on January 6, 2021. At trial, Dr. Jaime Weisman testified as an "expert in veterinary pathology and forensics." She testified that she performed a necropsy on the two goats. During the necropsies, she observed that one goat had "a minimum of four chop wounds to the neck and the head" and that the other goat had "a minimum of six chop wounds" to the neck and back of the head. She testified that "the chop wounds are gonna be the root cause" of the goats' deaths, but that she also found evidence of bleeding in the brain. She agreed that "[t]hese animals suffered" before they died.

---

[4] Upon review of the video recordings in the record, Haefele and McKinney appear to use a machete to hack at the goats' necks. At trial, Dr. Montgomery-Rodgers refers to the blade as a "curved brush axe."

The Commonwealth also called Dr. Lincoln Montgomery-Rodgers to testify as an expert in "livestock veterinary medicine." He testified that the American Veterinary Medical Association ("AVMA") "has extensive guidelines on what constitutes acceptable methods of euthanasia for a variety of species." According to Dr. Montgomery-Rodgers's testimony, the AVMA specifically prohibits the use of "[b]lunt force trauma" on certain animals, such as cattle, sheep, and goats, "because of the thickness of the skull." He explained that these guidelines are also "used by the meat packing industry" to establish "what would constitute the least painful or most efficient way to dispatch an animal." He agreed that "a spiked mace" was not an acceptable way to kill a goat. In addition, he testified that "the most common method for at-home slaughter [of a goat] would be a gunshot to the head to render the animal unconscious, and then severing the jugular vein and carotid arteries with a sharp knife to exsanguinate the animal and actually kill him."

The trial judge convicted Haefele of two counts of maliciously maiming the livestock of another, in violation of Code § 18.2-144, and two counts of conspiring to maliciously maim the livestock of another.[5] Haefele now appeals to this Court.

## II. ANALYSIS

On appeal, Haefele contends that he could not be convicted under Code § 18.2-144 "because the defendant [Haefele] was acting with the permission of, and in concert with, the

---

[5] The trial court also convicted Compton and McKinney of two counts of maliciously maiming the livestock of another and two counts of conspiracy. Haefele, Compton, and McKinney filed petitions for appeal to this Court, which this Court denied by orders dated October 21, 2021. Subsequently, Compton and Haefele filed a three-judge demand for a writ panel with this Court. On January 21, 2022, this Court granted Compton and Haefele their appeals pursuant to amendments to Code § 17.1-407 (effective January 1, 2022). McKinney chose to file a petition for appeal with the Supreme Court of Virginia, which the Supreme Court refused.

Morgan, as the owner of the animals, could not be convicted under Code § 18.2-144 and was instead convicted of two counts of misdemeanor animal cruelty—in violation of Code § 3.2-6570—and was sentenced to twelve months in jail for each conviction.

owner of the animals in question." He argues "that all crimes relating to property in Chapter 5 of [Title 18.2 of] the Code of Virginia, have some element, express or otherwise, of trespass against the interests of another (person or entity)." He argues that Code § 18.2-144, which is located in that portion of the Code, requires the Commonwealth to show "the trespass against the animal owner's property, as well as the crime against the animal itself."

## A. Interpreting Code § 18.2-144

Haefele's argument requires this Court to analyze Code § 18.2-144. "Statutory interpretation is a question of law which we review de novo." *Wright v. Commonwealth*, 278 Va. 754, 759 (2009) (citing *Washington v. Commonwealth*, 272 Va. 449, 455 (2006)). "When construing a statute, our primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Blake v. Commonwealth*, 288 Va. 375, 381 (2014) (quoting *Cuccinelli v. Rector, Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012)). "[W]e must assume that 'the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute.'" *City of Va. Beach v. ESG Enters., Inc.*, 243 Va. 149, 153 (1992) (quoting *Barr v. Town & Country Props., Inc.*, 240 Va. 292, 295 (1990)). Consequently, we "apply[ ] the plain meaning of the words unless they are ambiguous or would lead to an absurd result." *Wright*, 278 Va. at 759 (citing *Washington*, 272 Va. at 455).

Code § 18.2-144 provides, in relevant part,

> Except as otherwise provided for by law, *if any person maliciously shoot, stab, wound or otherwise cause bodily injury to*, or administer poison to or expose poison with intent that it be taken by, *any horse, mule, pony, cattle, swine or other livestock of another, with intent to maim, disfigure, disable or kill the same*, or if he do any of the foregoing acts to any animal of his own with intent to defraud any insurer thereof, *he shall be guilty of a Class 5 felony*.

(Emphasis added).  In this case, the plain language of this statute required the Commonwealth to prove (1) that the accused shot, stabbed, wounded, or otherwise caused bodily injury to livestock; (2) that the accused acted maliciously; (3) that the accused intended to maim, disfigure, disable or kill the livestock; and (4) that the livestock belonged to another person.  *See id.*

Haefele argues that he could not be convicted of violating Code § 18.2-144 because he acted "with the permission of the owner of the animals."  Noticeably absent from the statute, however, is any language limiting the application of Code § 18.2-144 to those cases where the accused acted *against the will of the owner*.  Adopting Haefele's construction of this statute would require this Court to add words to the statute that the General Assembly did not include.  However, "[w]here the General Assembly has expressed its intent in clear and unequivocal terms, it is not the province of the judiciary to add words to the statute or alter its plain meaning."  *Hill v. Commonwealth*, 73 Va. App. 206, 213 (2021) (quoting *Jackson v. Fid. & Deposit Co. of Md.*, 269 Va. 303, 313 (2005)), *aff'd*, ___ Va. ___ (Aug. 11, 2022).  As the Supreme Court has directed, "Virginia courts 'presume that the legislature chose, with care, the words it used when it enacted the relevant statute.'"  *Tvardek v. Powhatan Vill. Homeowners Ass'n, Inc.*, 291 Va. 269, 277 (2016) (quoting *Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337 (2011)).  "The act of choosing carefully some words necessarily implies others are *omitted with equal care*."  *Rickman v. Commonwealth*, 294 Va. 531, 540 n.3 (2017) (emphasis added) (quoting *Cent. Va. Obstetrics & Gynecology Assocs., P.C. v. Whitfield*, 42 Va. App. 264, 280 (2004)).  Therefore, the absence of any language in the statute limiting Code § 18.2-144 to those who act without the consent of the owner demonstrates that the General Assembly did not intend to include such words in Code § 18.2-144.  *See Haba v. Commonwealth*, 73 Va. App. 277,

291 (2021) (holding that the absence of certain limiting language in a statute "signifies that the legislature did not intend to provide such limits").

Haefele's argument heavily relies on the statute's location within the Virginia Code. However, this Court is bound by the words of the statute, not its heading or location within the Code. *See Jones v. Div. of Child Support Enf't on Behalf of Owens*, 19 Va. App. 184, 189 (1994) ("It is well-settled, however, that the words of the statute, not its heading, carry the force of law." (*citing Ritholz v. Commonwealth*, 184 Va. 339, 367 (1945))). Furthermore, a review of other statutes within the same part of the Virginia Code (Article 7 of Chapter 5 of Title 18.2, "Damage to and Tampering with Property") reveals that, in some of those other statutes, the General Assembly chose to include express language criminalizing only those actions taken without the owner's consent.[6] Clearly, if the General Assembly had wanted to include such language in Code § 18.2-144, it could have done so.

Given that the General Assembly chose not to include such limiting language in this particular statute, we must presume that it did so intentionally, and we have no authority to add words to the statute or to alter its plain meaning. Consequently, we hold that the plain language of Code § 18.2-144 criminalizes all malicious wounding of the livestock of another person— regardless of whether the owner of the livestock actually authorized the malicious act.

### B. Whether Haefele Acted with Malice

Next, we address whether the trial court had sufficient evidence to find that Haefele acted with malice. Haefele argues that the Commonwealth failed to prove he acted with malice because "the owner of the goats had given him permission to act against the goats" and therefore he believed that "he was not acting wrongfully."

---

[6] *See, e.g.*, Code §§ 18.2-146 (criminalizing the destruction of another person's vehicle, aircraft, boat, or vessel "against the will or without the consent of the owner"); 18.2-147 (criminalizing the entering or setting in motion of a vehicle, aircraft, boat, locomotive or rolling stock of a railroad "without the consent of the owner or person in charge of [the] vehicle").

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Crowder v. Commonwealth*, 41 Va. App. 658, 663 (2003) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," *Riner v. Commonwealth*, 268 Va. 296, 330 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" *Crowder*, 41 Va. App. at 663 (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (*en banc*)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

"Whether or not an accused acted with malice is generally a question of fact and may be proved by circumstantial evidence." *Canipe v. Commonwealth*, 25 Va. App. 629, 642 (1997). "In making the determination whether malice exists, the fact-finder must be guided by the quality of the defendant's conduct, its likelihood of causing death or great bodily harm, and whether it was volitional or inadvertent . . . ." *Id.* at 642-43 (alteration in original) (quoting *Essex v. Commonwealth*, 228 Va. 273, 282 (1984)).

"Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." *Burkeen v. Commonwealth*, 286 Va. 255, 259 (2013) (footnote omitted) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). "Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed a purposeful and cruel act without any or without great provocation." *Synan v. Commonwealth*, 67 Va. App. 173, 187 (2017) (quoting *Robertson v. Commonwealth*, 31 Va. App. 814, 823 (2000)). "Malice may be inferred from the 'deliberate use of a deadly weapon unless, from all the

evidence, [there is] reasonable doubt as to whether malice existed.'" *Fletcher v. Commonwealth*, 72 Va. App. 493, 507 (2020) (alteration in original) (quoting *Strickler v. Commonwealth*, 241 Va. 482, 495 (1991)). "A 'common theme running through [the definitions of malice] is a requirement that a wrongful act be done wilfully or purposefully.'" *Avent v.* Commonwealth, 279 Va. 175, 202 (2010) (alteration in original) (quoting *Essex*, 228 Va. at 280).

Here, the record clearly shows that Haefele cruelly, brutally, and repeatedly struck the small, defenseless goats with a spiked club without any provocation whatsoever—and with evident enjoyment. For approximately ten minutes, Haefele roamed the goat pen, seeking out opportunities to strike the goats with the spiked club. When the goats fled, Haefele lured the goats closer to himself using feed for the goats—making it easier for him to strike at them with the spiked club. When the repeated blows to the goats failed to kill them, Haefele grabbed hold of one of the goats, pinned it beneath his knee, and chopped at the goat's neck several times with a machete as it bleated, bled, and writhed in pain. Dr. Weisman testified that the goats suffered before they died, and Dr. Montgomery-Rodgers testified that blunt force simply is not an acceptable method of killing goats because their skulls are too thick for such methods to effectively and efficiently kill the animal without inflicting more pain than necessary. Furthermore, the videos show Haefele and his associates thoroughly enjoying this exercise of brutality. They laughed and joked about causing the goats' injuries and suffering throughout the attack—calling "strikes" and "home runs" as Haefele swung at the goats. Consequently, a rational factfinder certainly could have reasonably inferred that Haefele cruelly beat the goats inflicting needless suffering on them for his and his co-defendants' amusement. *See Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022) ("[W]e, on appellate review, view video evidence . . . for the limited purpose of determining whether any rational factfinder could have viewed it as the trial court did.").

Therefore, the evidence clearly supports the trial court's conclusion that Haefele committed "a purposeful and cruel act" sufficient to infer that Haefele acted with malice. *See Synan*, 67 Va. App. at 187. Although owners of livestock certainly have the right to employ others in properly euthanizing or slaughtering their animals, the manner used by Haefele to bring about the goats' painful deaths in this case clearly demonstrates that he acted with malicious intent. In short, Haefele acted cruelly and brutally, inflicting great amounts of pain and injury on the goats by repeatedly striking them with multiple deadly weapons (e.g., the spiked club and the machete)—resulting in a prolonged, especially painful death. *See Pannill v. Commonwealth*, 185 Va. 244, 254 (1946) (describing a deadly weapon as "one which is likely to produce death or great bodily injury from the manner in which it is used"). For all of these reasons, we certainly cannot say that no rational factfinder could have found the evidence sufficient to conclude that Haefele maliciously caused bodily injury to the goats with the intent to maim, disfigure, disable, or kill them. Therefore, we affirm Haefele's two convictions for maliciously maiming the livestock of another.

### C. Haefele's Conspiracy Convictions

Haefele also contends that the trial court erred in convicting him of conspiring to maliciously maim another person's livestock because "the Commonwealth failed to prove the underlying felony offense[s]." Given that the trial court certainly did not err in convicting Haefele under Code § 18.2-144, *as noted supra*, Haefele's only argument in support of his second assignment of error fails, and we uphold the trial court's convictions of Haefele for conspiring to maliciously maim another person's livestock.

### III. CONCLUSION

In short, the plain language of Code § 18.2-144 criminalizes the malicious maiming of another person's livestock—regardless of whether the accused had the owner's permission to

- 11 -

commit the act. The evidence in this case clearly supports the conclusion that Haefele

committed a purposeful and cruel act. He brutally, cruelly, and repeatedly struck the small,

defenseless goats with a spiked club in order to kill them, and he chopped and sawed at the neck

of one of the goats with a machete in an attempt to kill it. Throughout the cruel attack, he and

his group of co-defendants laughed at and made jokes about the goats' suffering. Given this

evidence, we certainly cannot say that no rational factfinder could have concluded that Haefele

maliciously caused bodily injury to the goats with the intent to kill them. Finally, given that the

trial court did not err in convicting Haefele under Code § 18.2-144, Haefele's only argument in

support of his second assignment of error challenging his conspiracy convictions is without

merit. Therefore, we uphold Haefele's convictions for maliciously maiming the livestock of

another and for conspiring to maliciously maim the livestock of another.[7]

*Affirmed and remanded.*

---

[7] The Commonwealth, in its brief, notes:

> The sentencing summary appears to contain an error because it
> reflects a total sentence imposed of 22 years and 12 months where
> the sentence imposed should total 18 years and 12 months. In such
> case, this Court should remand this case for the sole purpose of
> correcting the scrivener's error in the sentencing order pursuant to
> Code § 8.01-428(B).

We appreciate the Commonwealth's bringing this apparent scrivener's error in the trial court's order to this Court's attention, and we agree that the sentencing order does contain this apparent scrivener's error. Consequently, we affirm Haefele's convictions, but remand the case to the trial court for the limited purpose of correcting this scrivener's error in Haefele's final sentencing order pursuant to Code § 8.01-428(B).