# COURT OF APPEALS OF VIRGINIA

Present:   Judges AtLee, Chaney and Lorish
Argued at Lexington, Virginia


ANTHONY LEROY BRANNON

                                                        MEMORANDUM OPINION* BY
v.        Record No. 0104-24-3                          JUDGE LISA M. LORISH
                                                        FEBRUARY 18, 2025

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF PATRICK COUNTY
                          Marcus A. Brinks, Judge

          Elena Kagan, Assistant Public Defender (Kelsey Bulger, Deputy
          Appellate Counsel; Virginia Indigent Defense Commission, on
          briefs), for appellant.

          Kelly L. Sturman, Assistant Attorney General (Jason S. Miyares,
          Attorney General, on brief), for appellee.


During Anthony Leroy Brannon's bench trial, the trial court admitted the victim's out-of-court statement that he "beat her" under the excited utterance exception to the hearsay rule. Brannon argues this was error because her statement to the motel manager was made hours after the attack, and at the manager's coaxing. He also argues that the evidence was insufficient to support his conviction. Because any error would be harmless, and the evidence was otherwise sufficient, we affirm his conviction for unlawful wounding under Code § 18.2-51.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

In February 2023, Heather Burris and Brannon lived together at the Virginian Motel in Patrick County while Brannon was in the area for work. The motel manager, Jesse Christoph, knew Burris and Brannon well, as they had resided at the motel since at least October 2022 and Burris occasionally helped with housekeeping when the motel was short staffed. At first, Brannon's company paid for the motel room, but when they stopped, Brannon began paying for it himself. Burris and Brannon lived alone in their room, and Christoph had not observed Burris outside of Brannon's company except when she smoked cigarettes with other motel guests. Christoph knew that Brannon drove a red sedan, which Christoph saw in the motel parking lot before going to bed on the night of February 26, 2023. Christoph usually went to bed around 2:00 a.m. when he was working at the motel, but did not remember exactly when he went to bed that evening.

Security camera footage captured the outside of the motel room in the early morning of February 27, 2023. Around 3:47 a.m., the footage showed a "commotion" on the top floor of the motel between a man and a woman outside the room where Burris and Brannon lived. Christoph identified the man in the footage as Brannon and testified that it looked like he was "yelling or something." After this exchange, the footage shows the woman going down the stairs to the parking lot, where she disappears from view. Patrick County Sheriff's Investigator Tenille Jessup testified that it appeared to show Burris running away. The footage then shows the other person making repeated trips down the stairs to a car in the parking lot and loading items into the

---

[1] "Under well-settled principles of appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below." *Vay v. Commonwealth*, 67 Va. App. 236, 242 (2017) (quoting *Smallwood v. Commonwealth*, 278 Va. App. 625, 629 (2009)). "This principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Id.* (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

trunk and backseat of the car. Nearly 10 minutes later, that person got in the car and drove away. Christoph testified that the video showed Brannon "left in his red car."

On the morning of February 27, 2023, Christoph awoke around 6:00 a.m. to Burris ringing the bell in the motel lobby. When Christoph let Burris in, her face was badly bruised, one of her eyes was swollen shut, and she had cuts on her body. She seemed "fearful" and "had a hard time speaking at first." Burris was usually "plain spoken" with an occasional "light stutter," but "her speaking was not regular" when she arrived in the motel lobby. Burris was crying and seemed to be "breaking down." Christoph had not observed any injuries on Burris when he last saw her a couple of days earlier.

Christoph tried to "console" Burris and "get her to calm down" so that he "could figure out what exactly was going on." Christoph suggested calling law enforcement, but Burris hesitated. Christoph had Burris sit down and gave her an icepack for her injuries, something to drink, and a cell phone to use to call her family. He encouraged her to tell him what had happened and how he could help.

At trial, over Brannon's hearsay objection, Christoph testified that Burris then told him Brannon had "beat her" at some time after midnight. Burris also told him that Brannon broke things in the motel room and would not let her leave the room, though she was eventually able to escape and hide on the other side of the building. One or two hours after Burris arrived in the motel lobby, Christoph convinced her to call law enforcement.

Investigator Jessup arrived at the Virginian Motel around 8:30 a.m. and met with Burris. Like Christoph, Investigator Jessup observed that Burris had "highly visible" injuries. Burris's face was "black and blue" and one of her eyes was swollen shut. Burris also had scratches on her neck, an "elongated scratch" on her stomach, and injuries to her hands and one of her arms. Investigator Jessup called for EMS and took photographs of Burris's injuries. Investigator

Jessup took more photographs of Burris's injuries after Burris was transported to the hospital for treatment, and she testified that bruising to Burris's face, neck, and arm was still visible when Burris reported to the Victim Witness Office a week later on March 2, 2023. The photographs depicting Burris's injuries were admitted at trial.

As part of her investigation, Investigator Jessup examined the motel room that Burris shared with Brannon. She could tell by the clothing, unmade bed, and cigarette butts in the room that it had been recently occupied. Investigator Jessup observed broken glass on the floor and blood on the pillowcases. She took photographs of the room, which were admitted at trial.

Later that day, Investigator Jessup obtained warrants for Brannon and spoke with him by telephone. When Investigator Jessup told Brannon that he needed to turn himself in, Brannon said he would, but explained that he could not do so that day because he had to get his "affairs in order" and his car might not survive the trip to the Sheriff's Office. Investigator Jessup believed that Brannon was in South Carolina at the time of the call.[2] During the call, Brannon denied assaulting Burris and said that "she had done that to herself" and that she had "beat herself in the face with a cell phone." Investigator Jessup played audio messages that Burris had provided to law enforcement, which Brannon admitted he had sent to Burris.[3]

Brannon never turned himself in to the authorities. Instead, Investigator Jessup next spoke to Brannon on March 13, 2023, after he was extradited to Virginia. Brannon again denied any involvement in the assault and said that if he had done what he was accused of, he would have marks on his hands. Investigator Jessup confirmed that there were no marks on Brannon's hands, but told Brannon he should have turned himself in nine days earlier at the time of the incident so that she could have checked for marks then.

---

[2] Brannon was arrested on March 4, 2023, in North Carolina.

[3] The audio messages were not played for the trial court or admitted into evidence.

After closing arguments at trial, the trial court said that it was going to "discount any statement that supposedly was made by Ms. Burris to Mr. Christoph," noting that the Commonwealth had not accounted for the "time gap of about three hours" between Brannon leaving the motel and Burris arriving in the motel lobby to speak to Christoph. The trial court found that Brannon's acknowledgment of Burris's injuries to Investigator Jessup, coupled with the camera footage and Christoph's testimony that Burris lived alone with Brannon, was sufficient to place Brannon at the scene. The trial court noted that Burris was "badly beaten" and found Brannon's claim that she inflicted such serious injuries on herself with a cell phone incredible. Accordingly, the trial court convicted Brannon of unlawful wounding. After a sentencing hearing, Brannon noted his appeal.

## ANALYSIS

### I. Excited Utterance Exception to Hearsay

Brannon argues that the trial court erred by admitting Burris's statement that Brannon "beat her" under the excited utterance exception to the hearsay rule, and that the evidence was insufficient to sustain his conviction for unlawful wounding. We resolve the evidentiary objection by finding that any error was harmless given the substantial evidence of Brannon's guilt, which necessarily leads us to reject his sufficiency of the evidence challenge.

We start with Brannon's hearsay argument. "Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed absent an abuse of discretion.'" *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Nottingham v. Commonwealth*, 73 Va. App. 221, 231 (2021) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). "However, the admission of

'clearly inadmissible' evidence constitutes an abuse of discretion." *Holloman v. Commonwealth*, 65 Va. App. 147, 168 (2015) (quoting *Lawrence v. Commonwealth*, 279 Va. 490, 496 (2010)).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c). Hearsay evidence is inadmissible "unless it falls within one of the recognized exceptions to the hearsay rule, and . . . the party attempting to introduce a hearsay statement has the burden of showing the statement falls within one of the exceptions." *Campos v. Commonwealth*, 67 Va. App. 690, 705 (2017) (alteration in original) (quoting *Godoy v. Commonwealth*, 62 Va. App. 113, 119 (2013)).

One such exception to the hearsay rule is for excited utterances. An excited utterance is a "spontaneous or impulsive statement prompted by a startling event or condition and made by a declarant with firsthand knowledge at a time and under circumstances negating deliberation." Va. R. Evid. 2:803(2). "There is no fixed rule by which the question whether the statement is admissible as an excited utterance can be decided. Resolution of the issue depends on the circumstances of each case." *Synan v. Commonwealth*, 67 Va. App. 173, 183 (2017) (quoting *Hicks v. Commonwealth*, 60 Va. App. 237, 245 (2012)). That said, the statement must be "spontaneous and impulsive, thus guaranteeing its reliability," and "made at such time and under such circumstances as to preclude the presumption that it was made as the result of deliberation." *Id.* at 184 (quoting *Hicks*, 60 Va. App. at 245).

Brannon argues that the statement was not spontaneous and impulsive because it was made several hours after the "startling event," and only after Christoph coaxed Burris into talking. At the time Christoph testified, and when the trial court was asked to make a ruling on the hearsay objection, the only evidence before it was that Burris was badly injured, seemed to be "breaking down," and "had a hard time speaking at first." The security footage showing that Brannon left the

motel several hours before Burris woke up Christoph at 6:00 a.m. had not yet been introduced into evidence.[4] The trial court later concluded, based on the video evidence, that there was a "time gap of about three hours" between when Brannon left the motel and when Burris spoke to Christoph. Brannon did not make a new motion to exclude Christoph's testimony after the timeline evidence was introduced. We assume without deciding that the trial court erred in allowing Christoph to testify about the statements Burris made. Our next task is to determine whether that assumed error was harmless.

"[E]videntiary errors are subject to non-constitutional harmless error review." *Jones v. Commonwealth*, 71 Va. App. 70, 91 (2019). "A non-constitutional error is harmless when 'it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" *Davis v. Commonwealth*, 79 Va. App. 123, 146 (2023) (quoting Code § 8.01-678). This Court will not reverse a conviction based on an evidentiary error that "did not influence the [fact finder] or had but slight effect." *Id.* at 146 (quoting *Graves v. Commonwealth*, 65 Va. App. 702, 712 (2016)).

To begin with, we note that after the security footage evidence was introduced at the trial, the trial court stated that it was "going to discount any statement that supposedly was made by Ms. Burris to Mr. Christoph," given that the statement was made "about three hours" after the assault. Instead, the trial court said it considered that Brannon and Burris were alone, that Brannon knew about Burris's injuries, that the injuries were severe, and that Brannon's claim that Burris beat herself in the face with a cell phone was incredible.

_____

[4] "Although not controlling, the lapse of time between the 'startling event' and a declaration offered in evidence is relevant to a determination whether the declaration was spontaneous and instinctive, or premeditated and deliberative." *Synan*, 67 Va. App. at 184 (quoting *Doe v. Thomas*, 227 Va. 466, 471 (1984)).

- 7 -

It is plain from all the evidence presented that Brannon had a fair trial and that the rest of the evidence was sufficient to prove his guilt. Christoph testified that Brannon and Burris lived together at the motel for at least four months. They resided alone in their motel room, and Christoph had not observed Burris spending much time with anyone other than Brannon. On the night before the beating, Christoph saw Brannon's car in the motel parking lot before going to bed. Early the next morning, Burris appeared in the motel lobby with severe injuries. Christoph had not observed any of these injuries on Burris when he saw her a couple of days earlier.

Footage from a security camera showed only two people going in and out of the motel room in the early hours of that morning: Brannon and Burris. There was a "commotion" outside the motel room before Burris ran away. Then, Brannon took several trips down to his car, loading various items into the trunk and the backseat, before departing in his car. The trial court could have reasonably inferred that Brannon was leaving in the early morning hours and did not intend to come back. When Investigator Jessup went into the motel room later that morning, she found broken glass and bloodstained bedding in the room, supporting the inference that, combined with the other evidence, the beating took place there and not where Burris was in the time between when she left the motel and later woke the motel manager. In addition, Brannon left the state, refused to turn himself in, and was ultimately extradited to Virginia. Finally, upon his arrest, Brannon did not express any surprise over the news that Burris had been badly injured. Instead, he claimed that she inflicted the injuries on herself with a cell phone.

The trial court reasonably concluded from the totality of the evidence that Brannon was present when Burris's injuries were inflicted and that Brannon was the person who inflicted them. Because the trial court stated that it was not going to consider the hearsay statement, and because the trial court considered other evidence sufficient to support Brannon's conviction, we conclude that the error had no substantial effect and was harmless to the result. *See Slaughter v.*

- 8 -

*Commonwealth*, 49 Va. App. 659, 665 (2007) (explaining that "[w]e must take the trial court at its word" regarding consideration of evidence).

## II. Sufficiency of the Evidence

Brannon argues that the evidence was insufficient to prove that he was the perpetrator of the offense or that he had the requisite intent to "maim, disable, disfigure, or kill" Burris. Code § 18.2-51.

"In reviewing a challenge to the sufficiency of the evidence, we affirm the trial court's judgment 'unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.'" *Pulley v. Commonwealth*, 74 Va. App. 104, 123 (2021) (quoting *Poole v. Commonwealth*, 73 Va. App. 357, 363 (2021)). A reviewing court "does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). Instead, the relevant question is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Pulley*, 74 Va. App. at 123 (quoting *Mollenhauer v. Commonwealth*, 73 Va. App. 318, 333 (2021)). "These principles apply 'with equal force' to bench trials no differently than to jury trials." *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 249 (2016)).

We already reviewed the significant evidence of Brannon's guilt to conclude that any evidentiary error was harmless. We briefly recite the relevant law and evidence that pertain specifically to Brannon's arguments that the Commonwealth failed to put on evidence that he was the perpetrator of the assault, or that he had the requisite intent.

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). On appeal, we review the trier

of fact's determination of the identity of the perpetrator in the context of "the totality of the circumstances." *Brown v. Commonwealth*, 37 Va. App. 507, 523 (2002) (quoting *Satcher v. Commonwealth*, 244 Va. 220, 249 (1992)).

As with any element of an offense, the Commonwealth may prove the defendant's identity through direct or circumstantial evidence. *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999). Indeed, "[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)). "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Id.* at 512-13 (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). Thus, our review "does not distinguish between direct and circumstantial evidence, as the fact finder itself 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" *Moseley*, 293 Va. at 463 (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). "In other words, in a circumstantial evidence case . . . the accumulation of various facts and inferences, each mounting upon the others, may indeed provide sufficient evidence beyond a reasonable doubt" of a defendant's guilt. *Ervin v. Commonwealth*, 57 Va. App. 495, 505 (2011).

Given everything summarized above, the trial court reasonably concluded from the totality of the evidence that Brannon was present when Burris's injuries were inflicted and, after reasonably rejecting the claim that Burris injured herself with a cell phone, that Brannon was the person who inflicted them. The trial court also could have reasonably rejected Brannon's denials of guilt. *See Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) ("In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving [statements] of the accused and to

- 10 -

conclude that the accused is lying to conceal his guilt." (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998))). Thus, we find no error in the trial court's conclusion that Brannon committed the offense.

Finally, we address Brannon's argument that—to the extent there is sufficient evidence to show he assaulted Burris—there was insufficient evidence that he intended to maim, disfigure, disable, or kill her. "Intent is the purpose formed in a person's mind which may, *and often must*, be inferred from the facts and circumstances in a particular case." *Commonwealth v. Perkins*, 295 Va. 323, 330 (2018) (quoting *Burton v. Commonwealth*, 281 Va. 622, 626-27 (2011)). Furthermore, "[i]t is permissible for the fact finder to infer that every person intends the natural, probable consequences of his or her actions." *Id.* (alteration in original) (quoting *Ellis v. Commonwealth*, 281 Va. 499, 507 (2011)). A trial court may consider the extent and seriousness of a victim's injuries alongside other competent evidence in deciding, as a factual matter, whether a defendant intended to maim, disfigure, disable, or kill. *See Burkeen v. Commonwealth*, 286 Va. 255, 260-61 (2013) (affirming a conviction for malicious wounding in part because the "[t]he blow resulted in serious and disfiguring injury").

Here, Christoph and Investigator Jessup both testified to the extent of Burris's injuries, and photographs of the injuries were admitted at trial. "A picture may speak a thousand words, and these do." *Campbell v. Commonwealth*, 12 Va. App. 476, 484 (1991) (en banc). Burris's face and arms bore large, black bruises. One of her eyes was swollen shut. She had obvious scratches on her neck and an elongated cut across her stomach. Burris had to be transported to the hospital for treatment of her wounds, which remained visible for at least a week after the beating. Moreover, Christoph testified that Brannon appeared to be "yelling" outside the motel room in the security camera footage, and Investigator Jessup found broken glass and bloodstained bedding in the room.

- 11 -

This evidence, though circumstantial, supports the trial court's finding that Brannon intended to maim, disfigure, disable, or kill Burris. Even Brannon's trial counsel conceded that Burris suffered "significant injuries." "Intent can, and often must, be inferred from the act itself." *Perkins*, 295 Va. at 331. The trial court reasonably concluded that Brannon had the requisite intent from the severity of Burris's injuries, as well as Brannon's apparent agitation in the camera footage and the disordered state of the motel room following the beating. Thus, we find no error in the trial court's conclusion that Brannon intended to maim, disfigure, disable, or kill Burris. Because the trial court's findings are supported by the evidence and not plainly wrong, we affirm.

## CONCLUSION

For all these reasons, the circuit court's judgment is affirmed.

*Affirmed.*